UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
VICTORIA DIVISION

| | | |
|---|---|---|
| CLARICE MARIE HAVENS,[1] | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| v. | § | CIVIL ACTION NO. V-06-119 |
| | § | |
| VICTORIA OF TEXAS LIMITED | § | |
| PARTNERSHIP, et al., | § | |
| | § | |
| **Defendants.** | § | |

## MEMORANDUM OPINION & ORDER

Pending before the Court is Defendants' Motion for Summary Judgment (Dkt. No. 33) and Plaintiff's Motion for Extension of Time and New Scheduling Order (Dkt. No. 47). The Court, having considered the motions, responses and applicable law, is of the opinion that Plaintiff's motion should be denied and Defendants' motion be granted.

### Background

This action arises out of Plaintiff Clarice Havens' ("Havens" or "Plaintiff") treatment at and ultimate termination from Defendants DeTar Healthcare System and DeTar Hospital (collectively, "DeTar" or "Defendants"). Havens contends that DeTar discriminated against her based on her disability and age in violation of various state and federal laws, infringed upon her civil rights, failed to comply with Texas statutory law and committed an array of common law torts. Although Havens' Original Complaint (Dkt. No. 1) is almost entirely devoid of facts, from the Defendants' motion and other filings related to this case, the Court presents the following factual summary.

Havens, a 49-year-old woman, was first employed by DeTar as a laboratory technician for

---

[1] Plaintiff has informed the Court that the correct spelling of her name is Clarice Havens and the Court hereby substitutes her name as such. *See* Dkt. No. 47.

approximately three years in the mid 1980s and then for more than fifteen years from 1990 to July 2005. Although Havens purports to have long suffered from major recurrent depression, she received an associate's degree from Victoria College, obtained and maintained a license from the American Society of Clinical Pathologists and remained gainfully employed for nearly three decades. Havens is also able to perform a wide variety of everyday activities without assistance, including showering and dressing herself, driving a vehicle, performing common household chores, caring for her grandson, traveling, maintaining a checking account and scheduling and attending doctor's visits.

During her employment with DeTar, Havens spent time working at both the DeTar Hospital Navarro ("Navarro Campus") and the DeTar Hospital North ("North Campus"), where her job duties included conducting and interpreting laboratory tests and obtaining other bodily fluids for examination.

In 2001 and 2002, while working at the Navarro Campus, Havens underwent two surgical procedures which resulted in her taking a brief leave of absence. Following her return to work, Diana Hernandez ("Hernandez"), a nursing supervisor, prepared numerous incident reports negatively evaluating Havens' performance over a two month period. At least some of these reports were forwarded to Havens' supervisors Hilda Velasquez ("Velasquez") and David Koehl ("Koehl"). Following the opening of the North Campus in 2004, Havens requested and received a transfer to the new DeTar branch where, aside from a sole training operation, she did not work with Hernandez, Velasquez or Koehl.

Havens' tenure at the North Campus appears to have been pleasant. Indeed, Havens admittedly enjoyed her time there and was able to spend time with co-workers outside of work in a casual, social atmosphere.

In April 2005, while exercising at DeTar's health club, Havens and Hernandez repeatedly saw

one another from across the club but did not speak. Haven maintains that as a result of these silent moments of recognition, Hernandez launched a campaign to induce Havens' resignation or have her terminated. Havens claims that Velasquez, Koehl and others collaborated in this conspiracy.

In July 2005, Havens asked Assistant Laboratory Director Greg Vrieze ("Vrieze") for a pay raise. Vrieze took Havens' request to the DeTar administration and they considered but ultimately rejected the pay increase. According to DeTar, this decision was made because Havens was the highest paid laboratory technician on staff and had already been receiving annual pay increases. After Vrieze informed Havens of DeTar's decision, Havens became upset and emotional because she believed the decision was part of Hernandez's conspiracy to encourage her resignation. According to Havens, "[the conspirators] were building my blood pressure up so high that I was either going to die or quit."[2] Later that evening, Havens learned that a laboratory technician at the Navarro Campus would be transferring to a new position and as a result, Havens would have to work "on-call" shifts as his replacement. This event apparently heightened Havens' fears and increased her agitated state. At this point, Havens was in tears over the events of the evening.

Shortly thereafter, Havens was asked by an emergency room nurse to draw a specimen from two emergency room patients. Havens responded that she could not draw the labs from the younger of the patients because she feared that her appearance and emotional condition would frighten him. Havens claims that she refused to draw the lab from the older patient because she was upset and that the emergency room nurses were better suited to perform the task. Havens ultimately received permission to go home and left the hospital prior to the end of her shift. The evening's events were reported to the DeTar administration.

---

[2] Dkt. No. 33, Depo. of Clarice Havens at 66.

DeTar initiated an investigation into the evening's events and requested that Havens attend a July 31, 2005 meeting with the human resource department. During the meeting, and over Havens' objections, DeTar officials explained that they expected Havens to draw specimens when requested by nurses or physicians. In addition to contesting the requirement that she draw specimens on command, Havens asserted that she would not work the "on-call" shifts if and when they were requested. Based on Havens' refusal to perform her duties as explained to her, DeTar discharged Havens. Havens' termination was consistent with DeTar's Employee Conduct and Disciplinary System polices which allow for immediate termination based on a refusal to perform duties as assigned.

In February 2006, approximately six months following her discharge, Havens sought re-employment with DeTar, but remained adamant in her refusal to work "on-call" shifts. DeTar did not rehire her. In May 2006, Havens filed a discrimination charge with the Equal Employment Opportunity Commission ("EEOC") alleging that she had been discriminated against based on her disability and age.

Havens then filed this action, contending that DeTar subjected her to a hostile work environment and terminated her employment based on her disability and age in violation of the Americans with Disabilities Act ("ADA"), the Age Discrimination in Employment Act ("ADEA") and the Texas Commission on Human Rights Act ("TCHRA"), respectively. Employing a shotgun method, Havens also appears to claim that DeTar retaliated against her in violation of the above-cited statutes and failed to accommodate her on the basis of her disability. Havens further maintains DeTar violated her civil rights under 42 U.S.C. § 1985 and 42 U.S.C. § 1988, failed to comply with the Texas Government Code section 554.009 and should be liable pursuant to the common law claims of civil conspiracy, defamation, breach of employment contract, intentional infliction of emotional distress and negligent hiring, training,

supervision and retention.[3] Havens also appears to claim DeTar violated her constitutional rights to due process and the "pursuit of happiness." Havens does not appear to claim that DeTar's failure to rehire her was based on a discriminatory or otherwise illegal basis.[4]

## Standard of Review

A summary judgment shall be issued if the pleadings and evidence "show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c); *Hall v. Thomas*, 190 F.3d 693, 695 (5th Cir. 1999). In considering a motion for summary judgment, the Court construes factual controversies in the light most favorable to the non-movant, but only if both parties have introduced evidence showing that an actual controversy exists. *Lynch Props., Inc. v. Potomac Ins. Co. of Ill.*, 140 F.3d 622, 625 (5th Cir. 1998). The burden is on the movant to convince the court that no genuine issue of material fact exists as to the claims asserted by the non-movant, but the movant is not required to negate elements of the non-movant's case. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

The non-moving party may not rest solely on its pleadings. *King v. Chide*, 974 F.2d 653, 656 (5th Cir. 1992). For issues on which the non-movant will bear the burden of proof at trial, that party must produce summary judgment evidence and designate specific facts which indicate that there is a genuine issue for trial. *Celotex*, 477 U.S. at 322; *Wallace v. Tex. Tech. Univ.*, 80 F.3d 1042, 1047 (5th Cir. 1996). The non-movant "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). To meet its burden, the non-moving party must present "significant probative" evidence indicating that there is

---

[3] The Court has, in a prior order, dismissed Havens' Title VII and 42 U.S.C. § 1981 claims. *See* Dkt. No. 25.

[4] Although Havens does not appear to contest DeTar's decision not to rehire her, assuming she were to raise such a challenge, it would fail based on the reasoning employed below.

a triable issue of fact. *Conkling v. Turner*, 18 F.3d 1285, 1295 (5th Cir. 1995). If the evidence rebutting the summary judgment motion is only colorable or not significantly probative, summary judgment should be granted. *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 249-50 (1986).

**Discussion**

**A.      Havens' Motion for Extension of Time and New Scheduling Order**

Havens, proceeding pro se, has responded to Defendants' summary judgment motion by filing a document entitled "Plaintiff's Pro Se Response to Defendants' Motion for Summary Judgment and Request for Extension of Time; New Scheduling Order." Dkt. No. 47. However, Havens' filing presents no substantive argument, nor does it attach any summary judgment evidence controverting the facts as presented by DeTar. The filing merely asks for further extension of time to properly respond to DeTar's motion. Thus, the Court construes the filing as a Motion for Extension of Time and New Scheduling Order. However, this Court has already extended Havens' time in which to respond on several occasions. *See* Dkts. No. 36, 38, 44. Most recently, the Court instructed Havens that she would have thirty days from February 28, 2008 to file a summary judgment response. *See* Dkt. No. 44. Based on the Court's numerous extensions of time, the explicit filing deadline laid out in its most recent order and the Court's discretion in governing such matters, Havens' Motion for Extension of Time and New Scheduling Order is denied.

Although the Court will not allow Havens further time to respond to DeTar's motion, and thus, DeTar's motion is essentially unopposed, the Court notes that unopposed motions for summary judgment, which dispose of litigation, may not be automatically granted. *John v. Louisiana Bd. of Trs. for State Colls. & Univs.*, 757 F.2d 698, 707-10 (5th Cir. 1985). The Court will thus address the merits of DeTar's motion.

**B.     Havens' Discrimination Claims Under the ADA, ADEA and TCHRA**

   **1.     Havens' Discrimination Claims are Untimely**

The ADA and ADEA require a plaintiff to file a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") within 300 days of the alleged discriminatory act. *See Ramirez v. City of San Antonio*, 312 F.3d 178, 181 (5th Cir. 2002) (ADA); *Clark v. Resistoflex Co., A Div. of Unidynamics Corp.*, 854 F.2d 762, 765 (5th Cir. 1988) (ADEA). The TCHRA requires a plaintiff to file a discrimination claim with the EEOC or the Texas Commission on Human Rights ("TCHR") within a shorter 180-day period of limitations. *Estate of Martineau v. ARCO Chem. Co.*, 203 F.3d 904, 913-14 (5th Cir. 2000). The limitations period begins to run "from the time the complainant knows or reasonably should have known that the challenged act has occurred." *Ramirez*, 312 F.3d at 181. Havens was terminated on July 31, 2005 and filed her charge with the EEOC on May 31, 2006. DeTar thus argues that the events about which Havens complains are time-barred because Havens presents no evidence she was subjected to harassment, retaliated against, not accommodated or terminated in the 300-day period before she filed her EEOC charge; to wit, between July 31, 2005 and May 27, 2006. A review of the facts discussed above confirms DeTar's contentions. Because Havens has not brought competent summary judgment evidence before the Court to counter DeTar's argument, Defendants' motion for summary judgment as to Havens' ADA, ADEA and TCHRA claims is granted. However, the Court notes that even if Havens' EEOC complaint were timely filed, her claims would fail on the merits as discussed below.

## 2. Havens' Unlawful Termination Claim[5]

Because Havens relies on circumstantial evidence, her ADA and ADEA claims as they relate to her allegation of unlawful termination must be analyzed under the familiar *McDonnell Douglas* framework. *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973); *see also Gowesky v. Singing River Hosp. Sys.*, 321 F.3d 503, 511 (5th Cir. 2003) (ADA); *Machinichick v. PB Power, Inc.*, 398 F.3d 345, 350 (5th Cir. 2005) (ADEA). Accordingly, Havens must first establish a prima facie case of discrimination. *Id.* This requires Havens to establish that she (1) is a member of a protected class, (2) was subjected to an adverse employment action, (3) was a qualified individual for her position and (4) was replaced by or treated less favorably than someone outside of the protected class. *Id.* Once Havens establishes her prima facie case, the burden shifts to DeTar to articulate a legitimate, non-discriminatory reason for the adverse employment action. *Id.* Once DeTar articulates such a reason, the burden shifts back to Havens to show by a preponderance of the evidence that the reason was (1) merely a pretext for unlawful discrimination or (2) only one of the reasons for its actions and that another motivating factor was the plaintiff's protected characteristic. *Id.*; *Rachid v. Jack in the Box, Inc.*, 376 F.3d 305, 312 (5th Cir. 2004).

Although DeTar presents compelling arguments, to which the Court substantially agrees, that Havens has failed to establish a prima facie case of discrimination under the ADA and ADEA, even if the Court were to assume, *arguendo*, that Havens had established her prima facie case under each statute, Havens' claim fails because she has not produced any evidence rebutting DeTar's legitimate,

---

[5] Aside from the divergent statute of limitations mentioned above, the TCHRA parallels the other federal statutes Havens relies upon. Texas courts accordingly rely on analogous federal precedent when interpreting the TCHRA and the court will analyze Havens TCHRA claims as coextensive with her ADA and ADEA claims. *See Rodriguez v. Conagra Grocery Prods. Co.*, 436 F.3d 468, 473-74 (5th Cir. 2006); *Pegram v. Honeywell, Inc.*, 361 F.3d 272, 285-86 (5th Cir. 2004).

non-discriminatory explanation for its decision to terminate her. DeTar posits and presents evidence supporting the contention that it terminated Havens based on her failure to perform job duties as assigned on the final evening of her employment and continued to refuse to perform such duties during her meeting with DeTar's human resources department. Indeed, refusal to perform one's job duties is a legitimate non-discriminatory reason for termination. *Chaney v. New Orleans Pub. Facility Mgmt., Inc.*, 179 F.3d 164, 167-68 (5th Cir. 1999). Because DeTar has articulated a non-discriminatory reason for terminating Havens' employment, the burden shifts to Havens to demonstrate that the proffered reason was false and merely a pretext for DeTar's unlawful discrimination or that Havens' protected status was a motivating factor in the Defendants' decision. Havens' response does not present any competent summary judgment evidence and thus, she has not met her burden. However, reading beyond Havens' filing and sifting through the evidence presented by DeTar, the Court fails to identify any evidence that DeTar's decision to terminate Havens was based on or motivated by any of Havens' alleged protected characteristics. Summary judgment is thus appropriate as to Havens' unlawful termination claim brought under the ADA, ADEA and TCHRA.

   **3.**  **Havens' Hostile Work Environment Claim**

  Havens' hostile work environment claim apparently centers around the allegedly harassing performance reviews penned by Hernandez in 2002 and 2003. Aside from failing to bring her claims in even a remotely timely fashion, Havens has failed to establish the prima facie case required to proceed on this claim. To establish a prima facie case of hostile work environment, a plaintiff must show that (1) she belongs to a protected group; (2) she was subjected to unwelcome harassment; (3) the harassment complained of was based on her protected status; (4) the harassment complained of affected a term, condition or privilege of employment; (5) the employer knew or should have known of the

harassment in question and failed to take prompt remedial action. *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 347 (5th Cir. 2007); *Celestine v. Petroleos de Venezuella SA*, 266 F.3d 343, 353 (5th Cir. 2001). Here, Havens fails to establish that Hernandez's negative evaluations were based on her age, disability or any other protected status. Because Havens bears the burden of establishing a prima facie case and has presented no competent summary judgement evidence to fulfill that burden, her hostile work environment claim fails.

### 4.     Havens' Retaliation Claim

Havens' appears to claim that DeTar retaliated against her based on some unspecified action on her part. As an initial matter, Havens' retaliation claim fails because Havens did not include such a claim in her EEOC charge and is thus precluded from raising it now. As DeTar notes, one of the central purposes of a charge before the EEOC is to place employers on notice of "the existence and nature of the charges against [it]." *EEOC v. Shell Oil Comp.*, 466 U.S. 54, 77 (1984); *see also Young v. City of Houston*, 906 F.2d 177, 179 (5th Cir. 1990); *Nat'l Ass'n of Gov't Employees v. City Pub. Serv. Bd.*, 40 F.3d 698, 711-12 (5th Cir. 1994).  Havens did not include the word "retaliation" in her EEOC charge and the charge otherwise fails to set forth allegations that DeTar retaliated against her. Therefore, Havens may not bring her retaliation claim now. Moreover, Havens' retaliation claim fails because she has not established a prima facie case of retaliation. To establish a prima facie case of retaliation, a plaintiff must satisfy three elements: (1) the employee engaged in a protected activity; (2) the employer took adverse employment action against the employee; and (3) a causal connection exists between that protected activity and the adverse employment action. *Brazoria County v. EEOC*, 391 F.3d 685, 692 (5th Cir. 2004). Havens admitted during her deposition that she never opposed any allegedly discriminatory

practice at DeTar or otherwise engaged in a protected activity.[6] Thus, it appears Havens concedes that DeTar had no basis for retaliation, i.e., that Havens did not engage in a protected activity for DeTar to retaliate against. Indeed, the first time Havens appears to have informed the DeTar administration that she felt she was being discriminated against was in her EEOC charge filed nearly a year after her termination. Furthermore, even assuming Havens had properly brought her retaliation claim before the EEOC and had engaged in some protected activity, she makes no showing that DeTar's actions were based on a retaliatory motive and not the legitimate non-discriminatory basis discussed above. Therefore, Defendants' motion for summary judgment as to Havens' retaliation claim is granted.

**5.     Havens' Claim that DeTar Failed to Accommodate her Alleged Disability**

Havens appears to claim that DeTar failed to accommodate her alleged disability. As with her retaliation claim, Havens' failure to accommodate claim fails because she did not include it in her EEOC charge and is thus barred from asserting it now. *EEOC v. Shell Oil Comp.*, 466 U.S. 54, 77 (1984); *see also Young v. City of Houston*, 906 F.2d 177, 179 (5th Cir. 1990); *Nat'l Ass'n of Gov't Employees v. City Pub. Serv. Bd.*, 40 F.3d 698, 711-12 (5th Cir. 1994). Havens' EEOC charge does not include the term "reasonable accommodation" and no allegations therein hint at the possibility she might raise such a claim in the future. Accordingly, she may not bring her failure to accommodate claim at this time. Moreover, it does not appear that Havens brought an appropriate request for accommodation before DeTar.  As the Fifth Circuit has observed, "it is the responsibility of the individual with the disability to inform the employer that an accommodation is needed ... if the employee fails to request an accommodation, the employer cannot be held liable for failing to provide one." *Taylor v. Principal Fin. Group, Inc.*, 93 F.3d 155, 156 (5th Cir. 1996). Because Havens has not presented, nor can the Court

---

[6] Dkt. No. 33, Depo. of Clarice Havens at 205-06.

11

otherwise identify, evidence that she requested an accommodation from her employer, her claim is without merit. DeTar's motion for summary judgment as to Havens' accommodation claim is thus granted.

## C.     Havens' Civil Conspiracy Claim

Havens brings claims of civil conspiracy under 42 U.S.C. § 1985 and Texas state law. To succeed on a civil conspiracy claim, a plaintiff must offer proof of the following elements: (1) two or more persons, (2) an object to be accomplished, (3) a meeting of the minds on the object or course of action, (4) one or more unlawful, overt acts, and (5) damages as a proximate result. *See Tri v. J.T.T.*, 162 S.W.3d 552, 556 (Tex. 2005). Havens' general allegations that Hernandez, Velasquez, Koehl and others conspired against her are insufficient to allow her civil conspiracy claim to proceed. Aside from the broad, conspiratorial allegations raised in her deposition testimony, Havens provides no evidence that any of the alleged conspirators had an object to be accomplished, came to a meeting of the minds or participated in an unlawful, overt act to coerce Havens to quit or be fired. Therefore, her civil conspiracy claim is subject to summary judgment.

## D.     Havens' Defamation Claim

Havens contends that DeTar defamed her because an unnamed emergency room nurse informed another hospital employee that Havens was going to be fired for insubordination. Havens became aware of the unnamed nurse's comments on July 31, 2005, the day she was terminated. Texas applies a one-year statute of limitations to defamation claims, and the filing of an EEOC complaint does not toll such limitations period. TEX. CIV. PRAC. & REM. CODE § 16.002; *Simmons v. Cadence Design Sys., Inc.*, CA No. 3:07-CV-1029-M, 2008 WL 731970, at *2-3 (N.D. Tex. March 19, 2008). Thus, Havens had until July 21, 2006 to file her claim of defamation with this Court. However, this suit was not filed until

December 1, 2006. Therefore, Havens' defamation claim is barred by the applicable statute of limitations and DeTar's motion for summary judgment as to that claim is granted.

**E.     Havens' Breach of Contract Claim**

Havens claims that DeTar, by discharging her in the manner it did, breached an employment contract that existed between the parties. Havens asserts that DeTar's "demerit" policy, which appears to be DeTar's Employee Conduct and Disciplinary System policy, constitutes the breached contract. Texas has long adhered to the doctrine that employment is presumed to be "at-will" absent an unequivocal agreement to the contrary. *Midland Judicial Dist. Cmty. Supervision v. Jones,* 92 S.W.3d 486, 487 (Tex. 2002). Accordingly, an employee may be terminated at any time and for any reason. *Montgomery County Hosp. Dist. v. Brown*, 965 S.W.2d 501, 502 (Tex. 1998). Employee handbooks, policy manuals and related documents are mere general guidelines in the employee/employer relationship and do not create an express or implied contract between the parties. *Brown v. Sabre, Inc.,* 173 S.W.3d 581, 585 (Tex. App.—Fort Worth, 2005, no pet.). Moreover, the Employee Conduct and Disciplinary System policy explicitly states that "nothing in this policy or in any other policy alters the fact that all employees of [DeTar] are employed for an indefinite duration or that their employment may be terminated without cause or notice, at the will of themselves or [DeTar]."[7] Similar disclaimers have been found not to alter an employee's "at-will" status in Texas. *See Werden v. Nueces County Hosp. Dist.*, 28 S.W.3d 649 (Tex. App.—Corpus Christi 2000, no pet.). Therefore, DeTar's policy did not represent an alteration to Havens' "at-will" employment status and her breach of contract claim fails.

**F.     Havens' Intentional Infliction of Emotional Distress Claim**

In order to establish a claim for intentional infliction of emotional distress, a plaintiff must show

---

[7] Dkt. No. 33, Ex. 5 ¶1.0.

the following elements: (1) the defendant acted intentionally or recklessly, (2) the conduct was extreme and outrageous, (3) the actions of the defendant caused the plaintiff emotional distress; and (4) the emotional distress suffered by the plaintiff was severe. *Kroger Tex. Ltd. P'ship v. Suberu*, 216 S.W.3d 788, 796 (Tex. 2006). Merely insensitive or rude conduct is not extreme and outrageous, nor are "mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities." *Id.* (citations omitted). Whether the conduct may reasonably be regarded as sufficiently extreme and outrageous as to permit recovery is generally a matter for the court to determine. *GTE Sw., Inc. v. Bruce*, 998 S.W.2d 605, 612-13 (Tex. 1999). "Ordinary employment disputes," such as an alleged wrongful termination, are insufficient to support an intentional infliction of emotional distress claim. *Id.* Based on the facts discussed above, this case does not present the type of extreme and outrageous conduct that could give rise to liability under an intentional infliction of emotional distress theory. Therefore, Havens' intentional infliction of emotional distress claim is subject to summary judgment.

## G.     Havens' Miscellaneous Claims and Claims of Constitutional Violation

Havens claims DeTar failed to comply with Texas Government Code section 554.009[8] and deprived her of various constitutional rights including her right to due process and the "pursuit of happiness." Aside from the patently frivolous nature of Havens' claims, the Court notes that her constitutional causes of action fail because, while private causes of action exist to redress constitutional deprivations visited upon a plaintiff by a defendant acting pursuant to state authority, DeTar is clearly not a state actor. *Oliver v. Scott*, 276 F.3d 736, 741 (5th Cir. 2002). Havens' section 554.009 claim is similarly inapplicable because DeTar is not a state or local governmental entity. Therefore, DeTar's motion for summary judgment as to Havens' miscellaneous claims and claims of constitutional violation

---

[8] Texas Government Code section 554.009 states "A state or local governmental entity shall inform its employees of their rights under this chapter by posting a sign in a prominent location in the workplace."

is granted.

**H.      Havens' Negligent Hiring, Training, Supervision and Retention Claims**

As noted elsewhere in the Fifth Circuit, several Texas appellate courts and federal district courts have begun to adopt the rule that employers are not liable for the allegedly negligent hiring, training, supervision and retention of an employee unless the employee committed some independent, actionable tort. *Johnson v. Blue Cross/Blue Shield of Tex.*, 375 F. Supp. 2d 545, 550 (N.D. Tex. 2005). Here, because the Court has dismissed Havens' other state and federal claims, she has no independent tort claims remaining against DeTar and thus cannot support a claim of negligent hiring, training, supervision and retention. Summary judgment is thus appropriate.

## Conclusion

Based on the foregoing, the Court concludes that no genuine issues of material fact remain and DeTar is entitled to summary judgment as a matter of law as to each of Havens' claims. Accordingly, this action shall be dismissed.

It is so ORDERED.

Signed this 24th day of April, 2008.

_____
JOHN D. RAINEY
UNITED STATES DISTRICT JUDGE